| Case No. | **CV 17-4414-DMG (JEMx)** | Date | August 28, 2017 |
|---|---|---|---|

| Title | *Maria Serrano v. Pacific Coast Feather Cushion Co., et al.* | Page | 1 of 6 |
|---|---|---|---|

Present: The Honorable     DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS - ORDER GRANTING PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT [DOC. # 17]**

On May 2, 2017, Plaintiff Maria Serrano filed a Class Action Complaint in the Los Angeles County Superior Court against Defendants Pacific Coast Feather Cushion Co. and Pacific Coast Feather Co. (collectively "Defendants"),[1] alleging the following California state law causes of action: (1) failure to provide meal periods; (2) failure to authorize or permit rest periods; (3) failure to pay all wages due upon separation of employment; (4) failure to furnish accurate wage statements; and (5) violation of California Business and Professions Code § 17200, *et seq*. Removal Notice, Ex. 1b, ("Complaint") [Doc. # 1-1.] On June 14, 2017, Defendants filed a notice of removal to this Court asserting diversity jurisdiction and jurisdiction under the Class Action Fairness Act ("CAFA"). Removal Notice [Doc. # 1].

On July 14, 2017, Plaintiff filed the instant motion to remand ("MTR") this case to state court on the grounds that Defendants have failed to show that: (1) the amount in controversy pertaining to Plaintiff's individual claims exceeds $75,000, and (2) the amount in controversy of the class's claims exceeds $5,000,000. [Doc. # 17.] On July 28, 2017, Defendants filed an opposition ("Opp'n"). [Doc. # 19.] Plaintiff filed a reply ("Reply") on August 4, 2017. [Doc. # 21.]

## I.
## FACTUAL ALLEGATIONS

Plaintiff alleges that during the four-year period preceding the filing of her Complaint (*i.e.*, four years prior to May 2, 2017), she was employed by Defendants, which are manufacturers of "down feather items in facilities in California."[2] *See* Compl. at ¶¶ 1–2, 11, 20. She intends to represent a class of "[a]ll persons currently or formerly employed as non-exempt employees by Defendants in the State of California within four years prior to the filing of this

---
[1] Plaintiff also named Does 1–20 as Defendants. *See* Compl. at ¶ 13.
[2] The Complaint does not specify Plaintiff's former job title or responsibilities. *See* Compl. at ¶ 11.

action to the present" and a subclass of members "who separated their employment from Defendants within three years prior to the filing of this action to the present." *See* Compl. at ¶¶ 20–21. Further, she claims that "[d]uring the relevant time period," Defendants failed to: "provide lawful meal periods[,] . . . authorize or permit lawful rest periods[,] . . . provide accurate semi-monthly itemized wage statements[,] and . . . pay all wages due upon separation of employment." *See id.* at ¶¶ 4, 41, 48, 54, 61, 69. Moreover, although Plaintiff claims that "Defendants have engaged in a pattern of wage and hour violations[,]" *see id.* at ¶ 3, she does not specify the frequency with which these purported violations of state law occurred. *See, e.g.*, *id.* at ¶ 43 ("At all relevant times, Defendants failed to pay Plaintiff and class members the full meal period premium for missed and untimely meal periods . . . ."). Furthermore, Plaintiff seeks, on behalf of herself and others similarly situated, monetary relief for these alleged violations, along with "interest, attorney's fees, costs[,] . . . expenses and penalties[,]" and "injunctive relief and restitution[.]" *See id.* at ¶¶ 5–6.

## II.
## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1332(a)(1), a district court shall have jurisdiction over a civil action where the matter in controversy exceeds the sum or value of $75,000 and there is complete diversity of citizenship between the parties ("traditional diversity jurisdiction"). Further, the Class Action Fairness Act ("CAFA") affords district courts jurisdiction "over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)). Further, pursuant to 28 U.S.C. § 1441(a), an action may be removed from a state court to a federal district court if the latter would have had "original jurisdiction" over the action had it been filed in that court.

If a complaint does not specify a particular amount of damages and the plaintiff challenges jurisdiction after removal, the removing defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Ibarra*, 775 F.3d at 1197. A district court "may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)). "[R]emoval 'cannot be based simply upon conclusory allegations where the [complaint] is silent'" as to the amount of damages." *Id.* (quoting *Allen*, 63

F.3d at 1335). Further, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *See Ibarra*, 775 F.3d at 1197.

With regard to traditional diversity jurisdiction in particular, the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction [under that statute] must be rejected if there is *any doubt* as to the right of removal in the first instance." *See id.* (emphasis added). Put differently, there is a "strong presumption against removal" in the context of traditional diversity jurisdiction.[3] *See id.* "If it is *unclear* what amount of damages the plaintiff has sought . . . then the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount." *Id*. at 566–67.

## III.
## DISCUSSION

Plaintiff does not dispute the diversity of the parties for the purposes of traditional diversity jurisdiction or CAFA jurisdiction, or the numerosity of the class under CAFA. MTR at 1. Plaintiff challenges only Defendants' assertions that: (1) the amount in controversy on her individual claims exceeds $75,000 such that traditional diversity jurisdiction is proper, and (2) the amount in controversy for the claims belonging to the putative class and subclass exceeds the $5,000,000 jurisdictional threshold for CAFA jurisdiction. *Id*.

### A.    Traditional Diversity Jurisdiction

With regard to Plaintiff's individual claims, Defendants contend that Plaintiff can recover between $102,873 and $220,460. *See* Opp'n at 8. This calculation is based upon Defendants' assumptions that: (1) Plaintiff can recover $25,512 for Defendants' alleged violations of state employment law, and (2) Plaintiff can recover attorney's fees ranging from $77,413 to $195,000. *See id.* Therefore, Defendants' jurisdictional theory is wholly reliant upon their ability to show the amount of attorney's fees Plaintiff may recover.[4]

---

[3] Although the U.S. Supreme Court has held that "no antiremoval presumption attends cases invoking CAFA[,]" the Court declined to "decide whether such a presumption is proper in mine-run diversity cases." *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014). Further, after *Dart*, the Ninth Circuit reaffirmed that if a plaintiff challenges CAFA jurisdiction, the removing defendant still bears "the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million . . . ." *See Ibarra*, 775 F.3d at 1197.

[4] The Court notes that there is a "split as to whether a court should consider only attorneys' fees incurred as of the time of removal or fees reasonably likely to be incurred after the date of removal." *See Bigby v. DS Waters of*

    Defendants attempt to satisfy their burden by citing cases that supposedly had "allegations similar to this one" and involved one plaintiff who recovered attorney's fees ranging from $77,413 to $195,000. *See* Opp'n at 7–8 (citing, *inter alia*, *Pantoja v. Brent*, 2013 WL 3340154, Cal. Super. Court, San Mateo Cty. (2013)). Nonetheless, aside from brief explanatory parentheticals that use words to the effect that a certain amount of attorney's fees was awarded "to a single plaintiff in a wage and hour case[,]" Defendants do not compare the allegations and circumstances of those cases with those of the instant matter. *See id.* Thus, Defendants' citation to these cases does not satisfy their burden of showing the amount in controversy through evidence and argument. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (suggesting that defendants may satisfy their burden of showing the amount in controversy by "submit[ting] evidence and argument").

    Furthermore, Defendants also submit evidence that in 2014, Plaintiffs' counsel filed a brief in another class action representing that their hourly billing rate was $450–$700. *See* Hilgenfeld Decl., Ex. 14 at 33. Defendants point out that "[a]n average rate of $600 / hour would only require 125 hours of work to litigate the claim through a jury trial" in order for Plaintiff's attorney's fees alone to equal $75,000. *See* Opp'n at 8. Nevertheless, not only do Defendants fail to explain why they choose "$600 / hour" as "[a]n average rate" used to compute the amount of attorney's fees, but they also fail to provide any evidence indicating the number of hours that Plaintiff's counsel could potentially bill to litigate her individual claims. *See id.* While it is not entirely unfathomable that Plaintiff's counsel would spend over 125 hours on that task, the Court would have to erroneously rely upon "mere speculation and conjecture" to arrive at that conclusion on this record, especially because that assumption would yield attorney's fees that are nearly three times the damages and penalties that Defendants claim Plaintiff may recover. *See Ibarra*, 775 F.3d at 1197 ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions.").

    For these reasons, the Court concludes that Defendants have failed to submit sufficient "summary-judgment-type-evidence" to overcome the "strong presumption against removal" premised on traditional diversity jurisdiction. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

---

*Am. Inc.*, No. CV 12-01362 MMM CWX, 2013 WL 394876, at *7 (C.D. Cal. Jan. 30, 2013) (collecting cases). Because of this Court's disposition of Plaintiff's MTR, the Court need not resolve this issue.

UNITED STATES DISTRICT COURT     JS-6 / REMAND
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 17-4414-DMG (JEMx)** | Date | August 28, 2017 |
|---|---|---|---|
| Title | *Maria Serrano v. Pacific Coast Feather Cushion Co., et al.* | Page | 5 of 6 |

### B.     CAFA Jurisdiction

Defendants do not explicitly identify the purported aggregate amount in controversy for Plaintiff's class action claims. *See* Opp'n at 9–13. When the alleged subtotals for the different monetary items of recovery are added together, however, it becomes apparent that Defendants are contending that the class could recover $5,278,624.90. *See id.* at 9–12. This figure relies upon, among other things, the assumption of a 100% violation rate in which Defendants violated the applicable provisions of the California Labor Code at every possible opportunity during the relevant period. *See* Opp'n at 9–11. Under this assumption, Defendants failed to provide each employee with the required meal and/or rest breaks on every shift during the class period.[5] *See id.* at 11.

Defendants contend that a 100% violation is appropriate because their alleged unlawful business practice "resulted in Plaintiff and all putative class members missing their meal and rest breaks." *See* Opp'n at 9. To support this contention, Defendants submit a declaration from one of their human resources officials, *see* Opp'n at 9; Montanari Decl. at ¶ 2, who states that the two Defendants "*have* similar practices for meal and rest breaks." *See id.* at ¶ 6 (emphasis added). Specifically, she claims that "[t]he individuals working on the same schedule will receive notification of the meal and rest breaks through the use of an alarm bell." *Id.* Defendants also rely upon allegations from Plaintiff's Complaint that "[a]t all *relevant* times, Defendants failed to pay Plaintiff and class members the full meal period [premium] for missed and untimely meal periods" and/or "the full rest period premium for missed or interrupted rest periods . . . ." *See* Opp'n at 9 (emphasis added) (quoting Compl. at ¶¶ 43, 50) (internal quotation marks omitted).

In this regard, the instant case is akin to *Ibarra*. There, the defendant-employer asserted that it could use the 100% violation rate to determine meal and rest period penalties because the operative complaint alleged that the employer had "a 'pattern or practice of failing to pay [its] Non-Exempt employees for working off-the-clock,' and that [the employer] '[hid] behind written policies that purport to forbid these unlawful labor practices while at the same time maintaining an institutionalized unwritten policy that mandates these unlawful practices.'" *See id.* at 1198. The Ninth Circuit rejected this assumption as "not grounded in real evidence[,]" reasoning that "a 'pattern or practice' of doing something does not necessarily mean *always* doing something." *See id.* at 1198–99.

---

[5] Defendants also utilize a 100% violation rate to ascertain the amounts in controversy for the wage statement and waiting time claims, respectively. *See* Opp'n at 9–11. Nevertheless, Defendants do not explain why this violation rate is appropriate for these claims. *See id.*

Likewise, although the evidence and allegations upon which Defendants rely are likely sufficient to demonstrate that they both *currently* have similar meal and rest break practices (*i.e.*, using an alarm bell to notify employees of such breaks), Defendants do not show that it is more likely than not that these practices allegedly violated employees' state law rights to meal and rest breaks on *each and every* shift *within the putative class period*. Put differently, Defendants fail to establish that—"within four years prior to the filing of this action to the present"—Compl. at ¶ 20, these practices potentially had the effect of denying employees a meal or rest break every time they were entitled to one. Further, like the plaintiff in *Ibarra*, Plaintiff in the instant matter vaguely alleges that "Defendants have engaged in a pattern of wage and hour violations . . . ." and fails to aver the frequency of these violations.[6] *See* Compl. at ¶ 3.

Accordingly, the utilization of a 100% violation rate to calculate the putative class's monetary recovery for its meal and rest break claims is "not grounded in real evidence." *See Ibarra*, 775 F.3d at 1199. Further, Defendants' failure to adequately prove this aspect of the amount in controversy deprives the Court of CAFA jurisdiction because, according to Defendants, it accounts for $3,129,874.36 of the putative class's purported total potential recovery of $5,278,624.90. *See* Opp'n at 9–12.

## IV.
## CONCLUSION

In light of the foregoing, Plaintiff's motion is **GRANTED** and this case is **REMANDED** to Los Angeles County Superior Court. All scheduled dates and deadlines are VACATED.

**IT IS SO ORDERED.**

---

[6] A declaration claiming that Defendants used this type of alarm bell notification practice *throughout the class period* and that the alarm bell rang/rings *at the same point(s) during each shift* might have satisfied their burden of justifying the 100% violation rate assumption.

Moreover, Defendants cite several district court cases that they claim support their assertion that a 100% violation rate is appropriate. *See* Opp'n at 9–10 (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *Muniz v. Pilot Travel Ctrs.*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (C.D. Cal. May 1, 2007); *Alvarez v. Ltd. Express, LLC*, No. 07CV1051 IEG (NLS), 2007 WL 2317125, at *3–4 (S.D. Cal. Aug. 8, 2007); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149–50 (C.D. Cal. 2010)). These cases not only pre-date the *Ibarra* decision, but they are also not binding authority.